IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| JOHN DILLARD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:87cv1186-MHT |
| COLBERT COUNTY COMMISSION, | ) | (WO) |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | | |
| LOYD D. FULMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:03cv1202-MHT |
| COLBERT COUNTY COMMISSION, | ) | (WO) |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

The question before the court in these two consolidated voting-rights cases is whether plaintiff Loyd D. Fulmer is a "prevailing party" entitled to attorney's fees from defendant Colbert County Commission because, according to Fulmer, although a change in state law rendered his complaints in these two cases moot, the

state law was a direct consequence of the filing of his complaints.  For the reasons that follow, the court concludes that he is not.

## I. BACKGROUND

The history of one of these two cases, <u>Dillard v. Colbert County Commission</u>, began 20 years ago as an outgrowth of proceedings in another case initiated in 1985 by plaintiff John Dillard and other plaintiff African-American citizens of Alabama asserting claims under § 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, and the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983.  This court made a state-wide finding that the challenged election schemes of nine Alabama counties were the product of, or tainted by, racially inspired enactments of the Alabama legislature.  The court subsequently allowed the plaintiffs to expand their complaint to include 183 cities, counties, and county

school boards that were using similar voting systems. Dillard v. Baldwin County Bd. of Educ., 686 F.Supp. 1459 (M.D. Ala. 1988) (Thompson, J.).

Defendant Colbert County Commission was among the entities added to the Dillard litigation. The commission admitted that its election system violated the Voting Rights Act, and the case proceeded immediately to the remedy phase. In 1988, this court approved a consent decree, the intent and effect of which was to create a majority-black district so as to end dilution of the African-American vote. That decree entailed, among other things, a change in the number of county commissioners from five, of whom four were elected from single-member districts and one was elected at-large, to six, all of whom were elected from single-member districts. The consent decree for the Colbert County Commission was, in some respects, similar to settlements and court-ordered relief reached in other Dillard cases. See Dillard v. Chilton County Bd. of Educ., 699 F.Supp. 870 (M.D. Ala.

1988) (Thompson, J.), aff'd, 868 F.2d 1274 (11th Cir. 1989) (table); Dillard v. Baldwin County Comm'n, 694 F.Supp. 836, 839-40 (M.D. Ala.) (Thompson, J.), amended, 701 F.Supp. 808 (M.D. Ala.) (Thompson, J.), aff'd, 862 F.2d 878 (11th Cir. 1988) (table).

After the court-approved and -ordered plans in this and other Dillard cases took effect, the legal landscape of the Voting Rights Act changed.  See Holder v. Hall, 512 U.S. 874 (1994) (federal court cannot modify size of elected governing body in order to remedy § 2 violation); Nipper v. Smith, 39 F.3d 1494, 1532 (11th Cir. 1994) (en banc) ("[U]nder Holder, federal courts may not mandate as a § 2 remedy that a state or political subdivision alter the size of its elected bodies."); see also White v. Alabama, 74 F.3d 1058, 1072 (11th Cir. 1996) (under Holder and Nipper, federal courts lack such authority even as part of a settlement).  In the wake of these decisions, intervening parties in one of the Dillard cases, Dillard v. Baldwin County Commission, challenged

4

the court-ordered remedy in that case that, among other things, increased the size of the at-large elected commission from four to seven commissioners.  After a trial on remand, this court concluded that under prevailing circuit law it had no choice but to sustain the intervenors' § 2 challenge and vacate the original relief.  Dillard v. Baldwin County Comm'n, 222 F.Supp.2d 1283 (M.D. Ala. 2002) (Thompson, J.), extended, 282 F.Supp.2d 1302 (M.D. Ala. 2003) (Thompson, J.), aff'd, 376 F.3d 1260 (11th Cir. 2004).

In 2004, following the Baldwin County intervenors' successful challenge to the court-ordered relief in that case, Fulmer filed suit in state court, Fulmer v. Colbert County Commission, claiming, among other things, that the 1988 relief afforded by this court for the Dillard plaintiffs' voting-rights challenge to the election scheme for the Colbert County Commission violated Holder and its progeny.  Fulmer's suit was removed to federal court, he was permitted to intervene in Dillard v.

5

<u>Colbert County Commission</u>, and the two cases were consolidated. But in November 2005, before this court could rule on Fulmer's claims, the Alabama State Legislature enacted, and voters ratified, a statute and constitutional amendment, Ala. Act Nos. 2005-108 & 2005-138, that provided independent state-law authority for the election system established by the 1988 consent decree and challenged by Fulmer. Because the six-member county commission had become a product of state law rather than federal-court order, Fulmer acknowledged that his voting-rights claims were moot and all parties agreed that these cases could be dismissed.[1]

Fulmer now moves for attorney's fees and expenses from the Colbert County Commission pursuant to 42 U.S.C.

---

1. In March 2006, the State of Alabama enacted additional legislation, Act No. 2006-252, which provides state-law authority for all local government election systems that are now operating under federal-court orders and that are not subject to a pending court challenge. Because state law is now the sole basis for the election systems in those cases as well, the consent decrees are now being dissolved and those cases dismissed. <u>Dillard v. Chilton County Comm'n</u>, 452 F.Supp.2d 1193, 1201 n.4 (M.D. Ala. 2006) (Thompson, J.).

§§ 1973l(e) and 1988(b), arguing that he is a "prevailing party" within the meaning of those statutes because the change in state law that rendered his complaints in these two cases moot was a direct consequence of the filing of his claims.  The county opposes Fulmer's motion on the grounds that he is not a "prevailing party."

## II. DISCUSSION

In federal civil-rights litigation, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b); id. § 1973l(e).  The first question in determining a party's entitlement to attorney's fees is whether the party has 'prevailed' in the statutory sense.  Here, as Fulmer has elected not to submit an itemized fee summary at this time, whether he is the prevailing party in this litigation is the only question before the court.

A.

At first blush, it appears that Fulmer could not possibly be the prevailing party.  It must be remembered that what Fulmer sought with his litigation was to undo the six single-member district scheme ordered by this court in 1988.  With the enactment of the 2005 state statutes and the dismissal of these cases, that scheme remained unchanged.  In other words, Fulmer did not achieve what he sought; as a practical matter, he surely lost.

On the other hand, there is a difference between the factual state of affairs that Fulmer sought to change and the legal conditions he sought to remedy.  To the extent that Fulmer's goal was to return the Colbert County Commission to an election system (in whatever form) free of the 1988 injunction--in other words, to undo an allegedly unlawful injunction--then he achieved his goal because the six single-member district scheme originally

ordered by this court now operates solely on the basis of state law.

Although this interpretation of events requires the court to stretch its common-sense view of what it means to "prevail" in a lawsuit, the court is willing to give Fulmer the benefit of the doubt and credit his argument that a significant goal of his suit was the dismantling of the allegedly unlawful 1988 injunction, not simply a return to the electoral scheme previously in effect. This leads the court to examine the meaning of "prevailing party" where, as here, a civil-rights case is dismissed as moot.

B.

In Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources, 532 U.S. 598 (2001), the United States Supreme Court held that a party is a "prevailing party" for fee-shifting purposes if he has achieved a sought-after "judicially sanctioned

change in the legal relationship of the parties." 532 U.S. at 600. The Eleventh Circuit Court of Appeals has interpreted <u>Buckhannon</u> to mean that "there must be: (1) a situation where a party has been awarded by the court at least some relief on the merits of his claim <u>or</u> (2) a judicial <u>imprimatur</u> on the change in the legal relationship between the parties." <u>Smalbein v. City of Daytona Beach</u>, 353 F.3d 901, 904-05 (11th Cir. 2003) (internal quotation marks, ellipses, and citation omitted). This second option, the "judicial imprimatur," requires a settlement agreement the court has approved, either by incorporating the terms of the settlement into the final judgment or by explicitly retaining jurisdiction to enforce the terms of the settlement. <u>Id</u>. at 905 (citing <u>Am. Disability Ass'n v. Chmielarz</u>, 289 F.3d 1315, 1320 (11th Cir. 2002)).

In setting out this definition of "prevailing party" under the fee-shifting statutes, the Eleventh Circuit has recognized that the Supreme Court's <u>Buckhannon</u> decision

"changed the landscape of the 'prevailing party' inquiry." Chmielarz, 289 F.3d at 1318. Before Buckhannon, a plaintiff could be the "prevailing party" under the so-called "catalyst theory," according to which "plaintiffs who have not obtained a formal judgment in their favor may nonetheless be awarded fees if (1) the defendant takes an action materially altering the legal relationship between the parties such that the plaintiffs achieve a significant goal of their suit; (2) their suit was the catalyst for such action; and (3) the plaintiffs' claim was colorable and enjoyed reasonable likelihood of success on its merits." Loggerhead Turtle v. County Council of Volusia County, 307 F.3d 1318, 1321 (11th Cir. 2002) (citing Morris v. City of West Palm Beach, 194 F.3d 1203, 1207-08 (11th Cir. 1999)). In Buckhannon, however, the Supreme Court "invalidated the 'catalyst theory.'" Chmielarz, 289 F.3d at 1318 (citing Buckhannon, 532 U.S. at 605). Now, all parties seeking "prevailing party" status for the purpose of being awarded attorney's fees

must satisfy either the relief-on-the-merits or the judicial-imprimatur requirement, as set out in Smalbein, 353 F.3d at 904-05.[2]

### C.

In these two consolidated cases, therefore, Fulmer is not a "prevailing party" entitled to attorney's fees under 42 U.S.C. § 1988(b) or 42 U.S.C. § 1973l(e) unless

---

2. Not all fee-shifting statutes have a "prevailing party" requirement. As the Eleventh Circuit explained in Loggerhead Turtle, some fee-shifting statutes allow courts to award attorney's fees "whenever the court determines such award is appropriate." 307 F.3d at 1323 (quoting, by way of example, the Endangered Species Act, 16 U.S.C. § 1540(g)). Buckhannon, the Loggerhead Turtle court held, applies only to the "prevailing party" statutes, not the "whenever ... appropriate" statutes, thereby preserving the catalyst theory for fee-shifting statutes without a "prevailing party" requirement. Id. at 1324-25. Unquestionably, however, Buckhannon applies to attorney's fees awards under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, and the Voting Rights Act, as amended, 42 U.S.C. § 1973l(e), both of which employ the "prevailing party" language. Buckhannon, 532 U.S. at 602-03 (citing these two statutes); id. n.4 ("We have interpreted these fee-shifting provisions consistently and so approach the nearly identical provisions at issue here." (citation omitted)).

he has obtained a court-ordered material alteration of his legal relationship to the county, as a result of, for example, either this court's adjudication of his claims on their merits, its entry of a consent decree, its incorporation of the terms of a private settlement into its final order, or its expressed retention of jurisdiction to enforce the settlement. <u>Chmielarz</u>, 289 F.3d at 1318-20. Fulmer <u>cannot</u> obtain attorney's fees under the catalyst theory; it is not enough to show that the filing of his legal claims was the catalyst for the change in state law that rendered his claims moot; rather, Fulmer must show that he generated some form of <u>judicial</u> action that brought this litigation to an end.

The record reflects that he did not. The parties' cross-motions for summary judgment were still pending when the change in state law rendered Fulmer's complaints moot and caused the dismissal of these cases, so this is not "a situation where a party has been awarded by the court at least some relief on the merits of his claim."

13

Smalbein, 353 F.3d at 905.  And although the parties agreed that these cases could be dismissed as a result of the new statute and constitutional amendment, this agreement was based on the occurrence of events external to this litigation, events that did not receive the "imprimatur" of the court.  Id.  More specifically, this court did not incorporate a private settlement into its final judgment dismissing these cases, nor did it explicitly retain jurisdiction to enforce the terms of a private settlement.  Id.; Chmielarz, 289 F.3d at 1320. In sum, Fulmer did not obtain any court-ordered material alteration of his legal relationship to the county.

Fulmer argues that he is a "prevailing party," even under the Buckhannon definition of that term, because the change in state law was a court-ordered remedy.  As Fulmer notes, the consent decree in Dillard v. Colbert County Commission, entered 16 years before Fulmer became a party to that case, required the county to request that the state legislature enact the court-approved election

14

plan as state law.  Therefore, Fulmer argues, the change in state law that rendered these cases moot was not a result of a "voluntary change in conduct ... lack[ing] the necessary judicial imprimatur on the change," Buckhannon, 532 U.S. at 605; rather, it was court-ordered conduct undertaken in compliance with a consent decree that does bear this court's "imprimatur."  According to Fulmer, the county's effort to change state law constituted the "court-ordered material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees," Smalbein, 353 F.3d at 904, and it was Fulmer's legal action that brought it about.

   The court thinks this is the catalyst theory dressed in Buckhannon's clothing.  Assuming without deciding that Fulmer is factually correct in his assertion that his complaints in these cases are causally linked to the change in state law that rendered them moot, there is a difference between being the catalyst for a defendant's compliance with a pre-existing court-approved consent

decree to which one was not a party, which is what allegedly happened here, and being the catalyst for the *creation* of a court-approved consent decree to which one is a party, which clearly did not happen in this case. Buckhannon requires that the plaintiff be a party to the judicial relief, not simply benefit from the defendant's compliance with a court order entered long before the plaintiff arrived on the scene. See Buckhannon, 532 U.S. at 605-06 ("We have only awarded attorney's fees where the plaintiff has received a judgment on the merits or *obtained* a court-ordered consent decree--we have not awarded attorney's fees where the plaintiff has secured the reversal of a directed verdict or acquired a judicial pronouncement that the defendant has violated the Constitution unaccompanied by *judicial* relief." (first emphasis added; citations and internal quotation marks omitted)); S-1 and S-2 v. State Bd. of Educ., 21 F.3d 49, 51 (4th Cir. 1994) (en banc) ("A person may not be a 'prevailing party' ... except by virtue of having

16

**obtained** **an enforceable judgment, consent decree, or settlement giving some of the legal relief sought."  (emphasis added)),** <u>cited approvingly in</u> **Buckhannon, 532 U.S. at 602.**

**Fulmer also argues that the change in state law received the imprimatur of the court because this court, by dismissing these cases after the change occurred, "tacitly approved" the local election in which voters ratified the constitutional amendment that enabled the six-member commission to operate on the basis of independent state-law authority rather than by federal-court injunction. This is clearly wrong. First, this court did not "tacitly approve" (nor did it tacitly disapprove) a local election; rather, the court dismissed these cases without objection when it was informed by the parties of a change in state law which eliminated the case or controversy before it. Second, the Eleventh Circuit has clearly stated that the "judicial imprimatur" requirement is not met unless the court <u>explicitly</u> (not**

17

tacitly) incorporates the terms of a settlement or decree into its final judgment or retains jurisdiction to enforce it.  <u>Chmielarz</u>, 289 F.3d at 1320.[3]

In sum, Fulmer is not a "prevailing party" in this litigation, and therefore cannot recover attorney's fees. He obtained no relief on the merits of his claims, nor did the court incorporate into its final judgment, or explicitly retain jurisdiction to enforce, a court-approved consent decree or private settlement agreement, <u>Smalbein</u>, 353 F.3d at 904-05.  Because the Supreme Court invalidated the the "catalyst theory" in <u>Buckhannon</u>, Fulmer cannot obtain attorney's fees merely by demonstrating that the change in state law that rendered his complaint moot would not have occurred but for his intervention.

---

3.  In addition to being incorrect as a legal matter, Fulmer's arguments are somewhat bizarre in that they would identify, as the "judicial imprimatur" on the relief obtained, both the very consent decree and the federal-court involvement in the makeup of elected local governing bodies that he challenged in his complaints. The court does not base its decision on that peculiar aspect of Fulmer's arguments, however.

**\* \* \***

**Accordingly, it is ORDERED that plaintiff Loyd D. Fulmer's motions for attorney's fees (doc. nos. 92 & 101) are denied.**

**DONE, this the 5th day of July, 2007.**

                                  /s/ Myron H. Thompson
                             **UNITED STATES DISTRICT JUDGE**